IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENN-CHING LUO                      :
                                    :
        v.                          :        CIVIL ACTION
                                    :        NOS.  14-6354, 15-4248
OWEN J. ROBERTS SCHOOL              :
DISTRICT, et al.                    :
_____:_____
                                    :
OWEN J. ROBERTS SCHOOL DISTRICT     :
                                    :        CIVIL ACTION
        v.                          :        NO.  15-2952
                                    :
B.L., by and through his Parent,    :
Jenn-Ching Luo.                     :


O'NEILL, J.                                          October 27, 2016

### MEMORANDUM

Currently pending are three related actions under the Individuals With Disabilities

Education Act, 20 U.S.C. § 1411, et seq. (IDEA), arising out of the creation of and efforts to

amend an Individualized Education Plan (IEP) for Jenn-Ching Luo's son, B.L. within the Owen

J. Roberts School District.  The parties filed multiple motions to dismiss the various claims in

these actions and Magistrate Judge Carol Sandra Moore Wells provided three separate reports

and recommendations on the motions.  I now focus on the multiple objections Luo has submitted

with respect to those reports.

### FACTUAL BACKGROUND

Luo's son, B.L. receives special education services.  He was originally placed in a day

program in an approved private special school in the Owen J. Roberts School District.  Am.

Compl., No. 14-6354 (Luo I), ECF No. 5, ¶ 19.  The special school also has a residential

program.  Id.  At an IEP meeting on November 21, 2013, Luo asked the IEP team to consider a

residential placement for B.L.  Id. ¶ 20.  The team agreed to consider this request in a follow-up meeting.  Id. ¶¶ 21–23.  At the February 28, 2014 meeting, the team concluded that B.L. would become a residential student effective in school year 2014, and it revised the IEP to reflect that decision.  Id. ¶¶ 24–25.

After the District learned of the revision, it asked the special school to provide a confirmation letter for a residential slot for B.L.  Id. ¶ 26.  Defendant Geoffrey Ball, a supervisor of special education in the Owen J. Roberts School District, then presented a seven-day 2010 residential form to Luo for her signature.  Id. ¶¶ 15, 28.  Luo immediately signed and returned the form on May 9, 2014.  Id. ¶ 28.

On June 25, 2014, Ball called Luo regarding an application which Luo had sent to Chester County requesting assistance for B.L.  Id. ¶ 30.  Ball indicated that he had helpful resources in Chester County and asked Luo to come to his office the next day.  Id.  During Luo's June 26 visit, Ball handed her a request for reevaluation paper with no further explanation.  Id. ¶ 31.  Believing the request to be for the reevaluation due in 2015, Luo signed the document.  Id.  The form actually sought Luo's consent to conduct the evaluation in the coming summer of 2014.  Id. ¶ 32.  At the same meeting, Ball asked Luo to sign an IEP invitation notice.  Id. ¶ 33.  Ball insisted that Luo's June 26, 2014 visit to his office was an IEP meeting, even though there were no other attendants and Luo was not given any advanced notice.  Id. ¶ 34.  Luo signed the meeting invitation notice, but indicated that notice was only given after she attended the meeting.  Id. ¶ 35.  After she signed the notice, Ball told Luo that the District could not place her son in a residential program.  Id. ¶ 36.

Initially, Luo believed the District's refusal to place B.L. in the residential program resulted from the State's denial of the funding application.  Id. ¶ 37.  Eventually, however, she

learned the District never sent the 4010 funding application to the State.  Id. ¶ 38.  Even though

the District had repeatedly informed her that her son would be a residential student and required

her signature on the 2010 residential form, Ball indicated that the District had no intention to

place the child into a residential program because the IEP was insufficient and the District

required a new evaluation.  Id. ¶¶ 43–44.  At that point, Luo had limited opportunity to seek a

remedy before the beginning of the new school year.  Id. ¶ 47.

On June 27, 2014, Luo received a letter from Ball with a revised IEP.  Id. ¶ 50.  The

revision included Specially Designed Instructions (SDIs) that required Luo to take a parent

training course under the District's supervision.  Id. ¶ 52.  He also issued a Notice of

Recommended Educational Placement (NOREP) to purportedly coerce Luo into taking the

parent training prescribed.  Id. ¶ 56.  Luo requested that Ball remove the revisions from the IEP,

but he refused to do so.  Id. ¶ 55.

Luo filed an administrative special education due process complaint against the District

under the IDEA, identifying four issues:  (1) whether the District could refuse to carry out the

IEP; (2) whether the District delayed Luo's opportunities to seek an appropriate educational

program for the child because of failure to timely issue a NOREP to reject a parent's concern for

residential placement; (3) whether the IEP revisions made by the District on June 26, 2014 were

appropriate and (4) whether the District denied B.L. a free appropriate public education.  Id. ¶

60.  To address these issues, Hearing Officer Cathy A. Skidmore held an administrative hearing

on August 27, 2014.  Id. ¶ 59.  In a decision dated September 15, 2014, Skidmore ordered an

independent educational evaluation (IEE) in order to determine B.L.'s needs.  Id. ¶ 73.  Luo

informed Ball that she disagreed with the Hearing Officer's order for an IEE and communicated

her intent to appeal the decision.  Id. ¶ 82.

On November 5, 2014, Luo commenced her first action (<u>Luo I</u>) in federal court to seek review of the Hearing Officer's order for an IEE.  <u>Id.</u> ¶ 83.  Nonetheless, Ball persisted in conducting the IEE and was assisted by defendant Sharon W. Montayne, a private attorney hired by the District.  <u>Id.</u> ¶¶18, 88.  The District also contracted with defendant Keri Kolbay, a licensed psychologist, to serve as an independent evaluator.  <u>Id.</u> ¶¶ 17, 89.  The District then released B.L.'s records to Kolbay without parental consent.  <u>Id.</u> ¶ 90.  Kolbay prepared an IEE report based on those records.  <u>Id.</u> ¶ 93.

Ball subsequently set December 15, 2014 as the date for a review of the IEE report and sent Luo an invitation to the IEP meeting by e-mail.  <u>Id.</u> ¶ 97.  After B.L's parents received the meeting notice, they checked the box stating, "I wish to attend the meeting, but this time and/or location is not convenient.  I prefer to meet at the following date:  Jan. 12, 2015 and time 1:45 PM.  Please contact me to make alternative arrangement."  <u>Id.</u> ¶ 101.  Ball never contacted them to arrange a mutually agreed-upon time and place, but instead sent a notice stating:  "The Owen J. Roberts School District is in receipt of your request to reschedule the IEP meeting scheduled for December 15, 2015 at 1:45PM.  The district is compelled to hold this meeting at the proposed date and time to review the report issued by the Independent Evaluator and implement any recommendations which may come from this report."  <u>Id.</u> ¶ 103.  The District then had the meeting at its chosen time.  Without a parent in attendance at the meeting, Ball revised the IEP to again demand that Luo take District-supervised training.  <u>Id.</u> ¶ 103.  On December 18, 2014, following the meeting, Ball, joined by Montayne, forwarded a NOREP to Luo, indicating that the revised IEP included a provision that Luo participate in District-supervised training.  <u>Id.</u> ¶¶ 109, 111, 112.

In response to Luo's request, the IEP team held another meeting on January 12, 2015, during which time it discussed both the IEE and proposed revisions to B.L.'s current IEP, based on Dr. Kolbay's recommendations.  Compl., No. 15-2952 (Luo II) ¶ 26.  The proposed revisions included "observations of B.L. by a behavioral specialist in the home and school environment upon parental consent and Camp Hill staff to provide the parents with information and opportunities or guided training on self-help and self-care."  Id. ¶ 27.  On January 16, 2015, the District issued another NOREP which notified Luo of its intent to implement the proposed SDIs requiring parent training that it intended to add to B.L.'s IEP.  Id. ¶ 28.

In February 2015, the District's school psychologist, Brian Schneider, evaluated B.L. Compl., No. 15-4248 (Luo III) ¶¶ 18, 73.  Luo gave consent for the evaluation, which included an adaptive behavior assessment.  Id. ¶ 73.  By directly comparing raw scores from the parent rating form and the teacher rating form—a process Luo claims is similar to comparing apples to oranges—Schneider opined that B.L. was more independent at school than at home.  Id. ¶¶ 80, 82.  Accordingly, Schneider determined that Luo should undergo parent training.  Id. ¶ 84.

Luo filed four[1] due process complaints objecting to the District's actions, all of which were consolidated into one hearing session with the consent of the parties.  Compl., Luo II, ¶¶ 8–10 & n.2.  A due process hearing was held on February 13, 2015.  Id. ¶ 11.  In a February 21, 2015 decision, the Hearing Officer found as follows:

> The District erred when having received notice of the Parents' intent to appeal and without waiting for the appeal timeline to lapse, it procured an Independent Educational Evaluation pursuant to a previous hearing officer's Order.
>
> The District violated the Parents' procedural rights when it released Student's educational records to the independent evaluator

---

[1]   The District states there were five due process complaints.  In her counterclaim, however, Luo contends there were only four due process complaints and specifically lists them.

without parental consent or seeking a further Order from the previous hearing officer.

The District erred when it acted upon the Independent Educational Evaluation twenty days after having been served a formal notice of appeal.

The Independent Educational Evaluation was not a substantively appropriate evaluation.

The District violated the Parents' procedural rights when it convened an IEP meeting on December 15, 2014 to consider the IEE and make IEP revisions based on the IEE despite Parents' prompt request to reschedule the IEP meeting.

The District violated the Parents' procedural rights when it made revisions to Student's IEP without parental participation.

The District erred when it retained these IEP revisions after the Parents strongly objected to them, and issued NOREPs indicating its intent to implement the contested revisions despite their being impossible to implement as written.

Id. ¶ 11 & Ex. A.  The Hearing Officer ordered the District to remove the IEE report from B.L's educational records and eliminate the contested revisions from the IEP.  Id.

On May 22, 2015, the District initiated its own litigation under civil action number 15-2952 (Luo II) requesting that the Hearing Officer Decision be reversed and vacated.  Id. ¶¶ 14, 42.  Luo responded with a counterclaim against the District challenging the need for an IEE and raising claims for both breach of implied covenant of good faith and fair dealing and malicious abuse of process.  Answer & Countercl., Luo II, ECF No. 9.  In addition, Luo brought a third-party complaint against defendants Sweet Stevens Katz Williams LLP, Jonathan P. Riba and Sharon W. Montanye, all of whom served as independent counsel for the District at the administrative level.  Third-party Compl., Luo II, ECF No. 11.

On July 31, 2015, Luo filed another civil action against the Owen J. Roberts School District, Geoffrey Ball, Brian Schneider and Sharon W. Montanye.  Compl., No. 15-4248 (Luo

III), ECF No. 1.  In this complaint, Luo alleged that, on March 18, 2015, Ball again included a revision for parent training in the IEP, which was again stricken by a Hearing Officer.  Id. ¶¶ 103, 105.  Luo claimed that in order to fight this repeated behavior by the District, she was forced to attend a total of eight due process hearings, successfully challenging Ball's efforts eight times.  Id. ¶¶ 43-44.  This ongoing process allegedly gave rise to multiple claims as follows: violation of equal protection rights by the District and Ball (claim 1), violation of liberty rights by the District and Ball (claims 2, 5, 6), malicious abuse of process by the District, Montanye and Ball (claim 3), violation of substantive due process rights by the District and Ball (claim 4), breach of the duty of good faith and fair dealing by the District and Ball (claim 7), defamation by the District and Ball (claim 8), harassment by the District and Ball (claim 9), violation of liberty rights by the District and Schneider (claim 10), violation of substantive due process rights by the District and Schneider, defamation by the District and Schneider (claim 12) and negligence by the District and Schneider (claim 13).

On January 16, 2015, the District and Ball filed a motion to dismiss Luo's complaint in Luo I.  Montanye, Skidmore and Kolbay filed separate motions to dismiss on January 19, 27 and 29, 2015 respectively.  As to Luo II, Luo filed a motion for judgment on the pleadings on August 11, 2015, the District filed a motion to dismiss the counterclaims on August 28, 2015 and Montanye, Riba and Sweet Stevens Katz & Williams LLP filed a motion to dismiss the third-party complaint on September 18, 2015.  Finally, as to Luo III, Ball, the District and Schneider filed a motion to dismiss on September 9, 2015.

On August 10, 2015, all three matters were referred to United States Magistrate Judge Carol Sandra Moore Wells for report and recommendation.  Judge Wells entered three thorough

reports and recommendations on June 29, 2016.  The parties proceeded to file objections.  As of

July 29, 2016, the objections were fully briefed and ripe for further judicial consideration.

<b>STANDARD OF REVIEW</b>

**I.      Motion to Dismiss Standard of Review**

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has

not stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); see also Hedges v.

United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, 550

U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.

Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009),

subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First,

the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions."  Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  Id. at 679. "Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  Id.  A complaint does not show an

entitlement to relief when the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–

34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to

defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the

complaint's "'factual allegations must be enough to raise a right to relief above the speculative

level.'"), quoting Twombly, 550 U.S. at 555.

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of

review have remained static.  Spence v. Brownsville Area Sch. Dist., No. 08-626, 2008 WL

2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short

and plain statement of the claim showing that the pleader is entitled to relief and need not contain

detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual

allegations in the complaint as true and view them in the light most favorable to the plaintiff."

Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

## II.     Standard of Review for Objections to a Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge to

file proposed findings and recommendations on a dispositive motion in a civil action. "Within

fourteen days after being served with a copy [of the magistrate judge's report], any party may

serve and file written objections to such proposed findings and recommendations as provided by

rules of court." 28 U.S.C. § 636(b)(1).

When a party files objections to a report and recommendation, the district court makes "a

de novo determination of those portions of the report or specified proposed findings or

recommendations to which objections are made." 28 U.S.C. § 636(b)(1)(C); United States v.

Raddatz, 447 U.S. 667, 674–75.  The court may accept, reject or modify, in whole or in part, the

magistrate judge's findings or recommendations.  Id.  Although the standard of review is de

novo, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. Raddatz, 447 U.S. at 675; see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).  The Court of Appeals has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

## DISCUSSION

I.    *LUO I*

On review of the motions to dismiss in Luo I, Magistrate Judge Wells proposed that all claims against Montayne and Skidmore be dismissed with prejudice.  In addition, she recommended that Kolbay's motion be granted without prejudice to Luo's ability to file an amended complaint and the District and Ball's motion be granted in part and denied in part without prejudice to refiling.  Luo has submitted objections to this report and defendants have filed responses.  I address each objection individually.[2]

A.    **Fifth Amendment Claims**

Magistrate Judge Wells first recommended that Luo's Fifth Amendment claims be dismissed because the Fifth Amendment is not applicable to the defendants, who are all state, not federal actors.  Luo now responds that because the defendants acted pursuant to IDEA, which is

---

[2]    The Report and Recommendation finds that the § 1983 claims for violations of IDEA and IDEA claims against individuals should be dismissed.  Luo objects that such a recommendation was unnecessary because the amended complaint did not include any § 1983 claims for violations of IDEA or IDEA claims against individuals.  Given Luo's representation that she did not include such claims in her amended complaint, I need not grant this portion of the report and recommendation.  Nonetheless, to the extent the amended complaint in Luo I purports to state a cause of action for violations of IDEA, it is dismissed with prejudice.

under the supervision of the U.S. Department of Education, defendants' conduct constitutes federal governmental action subject to the Fifth Amendment.

The Fifth Amendment provides, *inter alia,* that no person "shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.  However, "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action. . . ." Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54 (3d Cir. 1983).  Accordingly, the rights provided by the Fifth Amendment do not apply to the actions of state officials.  Leventry v. Watts, No. 06–193, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors.").

I do not find that the state actor defendants in this case are subject to the Fifth Amendment simply by their implementation of IDEA's mandate.  The IDEA sets forth a number of requirements that a State Educational Association must implement in accordance with the Act in order to receive federal funding.  Charlene R. v. Solomon Charter Sch., 63 F. Supp. 3d 510, 520 (E.D. Pa. 2014).  The implementation and structure beyond the specifications of the Act, however, are determined by the State Educational Association.  Id.  The Act then gives the State Educational Association the responsibility of apportioning the funds to Local Education Agencies, whereby the Local Education Agencies apply to the State Educational Association in order to receive that funding.  20 U.S.C. § 1413(a).  The State Educational Association bears responsibility for ensuring that Local Education Agencies comply with the mandates of the IDEA in providing educational services to those eligible students.  20 U.S.C. § 1412(a)(11)(A). The Court of Appeals has concluded that IDEA reflects the "state's primary responsibility to provide a publicly-supported education for all children and a specific intent to centralize this responsibility."  Kruelle v. New Castle Cnty. Sch. Dist., 642 F.2d 687, 696 (3d Cir. 1981).

The defendants in this case acted under direction from the Pennsylvania State Board of Education, which was charged with implementing the IDEA regulations. 22 Pa. Code § 1.2. The mere fact that IDEA set forth the requirements to which defendants were bound does not convert them into federal actors. Accordingly, I adopt the Report and Recommendation on this point and dismiss Luo's Fifth Amendment claim.[3]

### B.    Claims Against Skidmore

Luo's sole claims against Hearing Officer Skidmore are that (1) she violated Luo's liberty right to informed consent by ordering *sua sponte* an Independent Educational Evaluation and (2) she violated Luo's procedural due process rights by failing to give Luo a notice before ordering the IEE. Am. Compl., Luo I ¶¶ 141–42. The Magistrate Judge determined that Skidmore's alleged violations occurred while she was acting within the scope of her jurisdiction as a Hearing Officer, thus entitling her to absolute judicial immunity. Luo now objects on the grounds that Skidmore had no authority to issue an order for an IEE and, therefore, acted outside the bounds of her powers. In turn, Luo claims that Skidmore has no entitlement to judicial immunity.

"Quasi-judicial immunity attaches to public officials whose roles are 'functionally comparable' to that of a judge." Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011), quoting Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir. 2003) (further quotations omitted). Such immunity "flows not from rank or title or location within the Government . . . but from the nature of the responsibilities of the individual official." Cleavinger

---

[3]    Plaintiff's citation to Public Utilities Comm'n v. Pollak, 343 U.S. 451 (1952) is misplaced. In that case, the Supreme Court found that the Fifth Amendment was invoked by a "sufficiently close relation" between the federal government and the radio service used by a private transit company operating in Washington D.C. Id. Pollak has no bearing on whether a state actor implementing IDEA in a purely state system is a federal government actor.

v. Saxner, 474 U.S. 193, 201 (1985) (citation and internal quotation marks omitted).  "Thus, in evaluating whether quasi-judicial immunity protects a particular official, a court inquires into 'the official's job function, as opposed to the particular act of which the plaintiff complains.'" Keystone, 631 F.3d at 95, quoting Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir. 2006). Notably, a judge is not immune from liability for actions not taken in his or her judicial capacity or actions, though judicial in nature, taken in the complete absence of all jurisdiction.  Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000), citing Mireles v. Waco, 502 U.S. 9, 11–12 (1991).

The applicability of quasi-judicial immunity in this case turns on whether Skidmore acted within her judicial capacity when ordering an IEE pursuant to 34 C.F.R. § 300.502(d).  This provision states:

> (d) Requests for evaluations by hearing officers. If a hearing officer requests an independent educational evaluation as part of a hearing on a due process complaint, the cost of the evaluation must be at public expense.

34 C.F.R. § 300.502(d).  Luo asserts that this provision does not authorize the Hearing Officer to request an IEE.  Rather, it only states that if a hearing officer requests an IEE, and that request is accepted by both the parent and the District, then the District must pay for the evaluation.

Contrary to Luo's analysis, however, the Court of Appeals has held that a Hearing Officer is permitted, and in some cases required, to order an independent educational evaluation at public expense pursuant to 34 C.F.R. § 300.502.  M.Z. ex rel. D.Z. v. Bethlehem Area Sch. Dist., 521 F. App'x 74, 77 (3d Cir. 2013) (affirming district court's decision that the Hearing Officer had committed legal error when she declined to order a publicly-funded independent education evaluation despite her conclusion that the School District's report was inappropriate); see also Lyons v. Lower Merrion Sch. Dist., No. 09-5576, 2010 WL 8913276, at *3 (E.D. Pa.

Dec. 14, 2010) (recognizing that 34 C.F.R. § 300.502(d) "allows a hearing officer to order an IEE 'as part of' a larger process"); S. Kingstown Sch. Committee v. Joanna S., No. 13-127, 2014 WL 197859, at *9 (D.R.I. Jan. 14, 2014) (noting that a hearing officer can order an independent evaluation if the evidence establishes a deficient evaluation with which the parent disagrees), aff'd 773 F.3d 344 (1st Cir. 2014); Manchester-Essez Reg'l Sch. Dist. Comm'n v. Bureau of Special Ed. Appeals, 490 F. Supp. 2d 49, 54 (D. Mass. 2007) (noting that a Hearing Officer is permitted to order additional evaluations by the school district at public expense when necessary).

The administrative hearing at issue confronted the question—raised by Luo—of whether the IEP put in place by the District adequately provided B.L. with a free, appropriate public education because it did not place him in a residential program as previously discussed.  Compl., Luo I, ¶ 60.  Skidmore found that "[b]ased on the present record . . . the evidence is simply insufficient to establish whether a residential placement is necessary for the Student at this time." Ball & District's Mot. to Dismiss, Luo I, ECF. No. 12, Ex. A, 14.[4]  Skidmore went on to note that "[d]espite the Parents' contention that no evaluation is necessary at this time, this hearing officer must concur with the District, on the basis of the existing record, that a new evaluation of Student is essential so that the team has a comprehensive understanding of Student's current strengths and needs, before it can consider where the special education and related services should be provided." Id. at 16.  She concluded that this publicly-funded IEE would serve the "crucial function" of guaranteeing the meaningful participation of the parents throughout the remainder of the IEP and placement process.  Id. at 16–17.  Based on these findings, Skidmore

---

[4]    A court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment.  In re Rockefeller Ctr. Props., Inc. Secs. Litig., 114 F.3d 280, 287 (3d Cir. 1999).  The amended complaint explicitly references the Hearing Officer decision.  Am. Compl., Luo I, ¶¶ 59–63.

acted well within her jurisdiction of crafting an adequate remedy to ensure that appropriate

procedures were followed and that B.L. received a free appropriate public education.  As she is

entitled to absolute immunity for such a decision, I will dismiss Luo's claims against Skidmore.

**C.      Claims Against Montayne**

The Amended Complaint contains three claims pursuant to 42 U.S.C. § 1983 against

attorney Montayne:  two alleged violations of Luo's due process rights and an alleged violation

of Luo's liberty rights.  Magistrate Judge Wells found that Montayne was not a state actor and,

thus, was not amenable to suit for § 1983 purposes.  In turn, she recommended that all claims

against Montayne be dismissed with prejudice.  Luo now contends that, as counsel for the

District, Montayne acted on behalf of the state.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress[.]

42 U.S.C. § 1983.  The statute itself does not independently create substantive rights, but merely

"provides a remedy for deprivations of rights established elsewhere in the Constitution or federal

laws."  Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536

U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. 07–3172, 2008 WL

3930290, at *3 (E.D. Pa. Aug. 26, 2008).  A plaintiff may bring a § 1983 action if he alleges that

a person acting under color of state law deprived him of rights, privileges, or immunities secured

by the Constitution or laws of the United States.  42 U.S.C. § 1983; Anderson v. Davila, 125

F.3d 148, 159 (3d Cir. 1997).

"Ordinarily, [§ 1983's state action] requirement will exclude conduct by private parties. But when a private party and a public official conspire together to violate the constitutional rights of the plaintiff, the private party's conduct is committed under color of state law." Zenquis v. City of Phila., 861 F. Supp. 2d 522, 528 (E.D. Pa. 2012). As explained by the Supreme Court:

> [A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."

Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (citations omitted).

A civil rights plaintiff may not, however, bring conspiracy allegations against a private attorney based on actions within the scope of the attorney-client relationship. Heffernan v. Hunter, 189 F.3d 405, 413–14 (3d Cir. 1999); see also Lepre v. Lukus, 602 F. App'x 864, 869 (3d Cir. 2015), cert. denied, 135 S. Ct. 1858 (2015). The Court of Appeals specifically found that the actions of attorneys who represented a school district in a former employee's civil rights and employment discrimination action could not be subject to liability on the employee's federal civil rights conspiracy claim because they had acted within the scope of the attorney-client relationship. N'Jai v. Floyd, 386 F. App'x 141, 144 (3d Cir. 2010).

Luo does not dispute the legal principle that if Montayne was acting as counsel, she may not be held liable under § 1983. Rather, she challenges the Magistrate Judge's determination that the claims against Montayne concern actions taken in her counseling function. She counters that the three claims against Montayne arose from her role in conducting the IEE, releasing B.L.'s educational report to Kolbay without Luo's consent and reviewing and revising the IEP in

accordance with Kolbay's report while an appeal of the Hearing Officer decision was pending. Because none of these actions took place in a hearing or proceeding, Luo concludes that Montayne did not serve as counsel in those three claims.

Contrary to this argument, however, Luo's complaint specifically pleads that, at all relevant times, Montayne acted within the scope of the attorney-client relationship.  The amended complaint states that Montayne "is a private attorney, who was hired by Owen J. Roberts school district and willfully participated in making the decisions from which this action was commenced."  Am. Compl., Luo I, ¶ 18.  The amended complaint goes on to argue that after Luo objected to the Hearing Officer's order for a new IEE, defendant Ball persisted in conducting the IEE and Montayne "joined with the District" in that decision.  Id. ¶ 88.  When Ball scheduled a new IEP meeting for December 15, 2014, which was an inconvenient date for Luo, Montayne "joined with defendant Ball in the decision to have the IEP meeting for Dec. 1, 2015."  Id. ¶ 106.  Finally, the Amended Complaint asserts that Ball requested observation of B.L. at home and school and put a new demand for parent training in the IEP, actions which were "joined" by Montayne in an effort to coerce Luo to respond to the District's arbitrary decisions.  Id. ¶¶ 10, 112.  Although none of Montayne's alleged actions occurred within the context of a proceeding or hearing, the attorney-client relationship goes beyond such formal proceedings.  Nothing in the Amended Complaint suggests that, at any relevant time, Montayne exceeded the scope of her duties as legal counsel.  Therefore, I will deny Luo's objections to this portion of the Report and Recommendation and dismiss all claims against Montayne with prejudice.

### D.      Claims Against Kolbay

Luo brought three claims against psychologist Keri Kolbay:  (1) violation of Luo's right to privacy based on transmittal and review of B.L.'s records for the IEE (claim five); (2) violation of due process rights for continuing the IEE process after Luo appealed the Hearing Officer decision (claim six) and (3) violation of Luo's due process rights based on release of B.L.'s records without Luo's consent and completion of the IEE report after Luo filed an appeal (claim seven).

The Magistrate Judge found that claim five—alleging a violation of privacy rights under the Declaration of Independence—should be dismissed as both legally baseless and duplicative of claim seven.  As to claims six and seven, the Magistrate Judge determined that these claims survived Kolbay's motion to dismiss on the merits and on grounds of qualified immunity, but recommended that all of Luo's claims against Kolby be dismissed under the professional judgment rule.

Luo now raises an objection to the recommendations that (1) claim five be dismissed with prejudice and (2) the professional judgment rule bars Kolbay's liability.

### 1.      Merits of Claim Five

The allegations of claim five state as follows:

> 147.    The Constitution protects the individual interest in avoiding disclosure of personal matters under the life, liberty and pursuit of happiness phrase of the Declaration of Independence.
> 148.    District contracted defendant Kolbay as an independent evaluator.
> 149.    Defendant Ball transmitted the child's academic records to independent evaluator (Keri Kolbay) without plaintiff's consent.
> 150.    Defendants District, Ball, and Kolbay violated plaintiff of the liberty right to privacy.
> 151.    Wherefore, defendants District Ball, and Kolbay had violated plaintiff of the liberty right without due process of laws, and are liable under Section 1983.

Am. Compl., <u>Luo I</u>, ¶¶ 147–51.  The Magistrate Judge recommended that this claim be dismissed with prejudice for failing to state a claim under the Declaration of Independence, which confers no actionable rights, and because it is duplicative of claim seven.

As to the Magistrate Judge's determination that the claim improperly rests on the Declaration of Independence, I must disagree.  Luo is a pro se litigant.  "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  <u>Erickson v. Pardus</u>, 51 U.S. 89, 94 (2007) (internal citations omitted).  Liberally construing the amended complaint, I find that claim five states a cognizable cause of action.  Although Luo references the Declaration of Independence, the claim clearly indicates that it is grounded in the liberty rights of the constitution and made actionable under § 1983.  Am. Compl., <u>Luo I</u>, ¶¶ 150–51.

With respect to the Magistrate Judge's finding that claim five is duplicative of claim seven, I will also disagree.  As set forth above, claim five asserts violation of Luo's privacy interests resulting from Ball's transmission and Kolbay's review of B.L.'s educational records.  Claim seven also references the release of the records to Kolbay, but alleges that the liberty interest violation resulted from the District's pursuit and Kolbay's performance of an IEE without parental consent.  <u>Id.</u> ¶¶ 162–64.  Thus, although the claims have some overlap, they ultimately challenge two different actions by the defendants.  I grant Luo's objection on this ground and decline to dismiss claim five.

### 2.     The Professional Judgment Rule

I also will sustain Luo's objection that the professional judgment rule is inapplicable to the present claims.  The professional judgment rule has its origins in <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982).  The Supreme Court considered the standard of care owed to civilly committed

individuals and noted that medical care is one of "the essentials of the care that the State must

provide."  Id. at 324.  The Court rejected the Eighth Amendment "deliberate indifference"

standard of liability and, instead, outlined a "professional judgment" standard courts must apply

in the context of § 1983 claims by those who are civilly committed:

> [T]he Constitution . . . requires that the courts make certain that
> professional judgment in fact was exercised . . . . Persons who have
> been involuntarily committed are entitled to more considerate
> treatment and conditions of confinement than criminals whose
> conditions of confinement are designed to punish . . .
> . . .
> [T]he decision, if made by a professional, is presumptively valid;
> liability may be imposed only when the decision by the
> professional is such a substantial departure from accepted
> professional judgment, practice, or standards as to demonstrate that
> the person responsible actually did not base the decision on such a
> judgment.

Youngberg, 457 U.S. at 321–23 (internal quotation marks and citations omitted).  Thus, the

professional judgment standard applies to § 1983 medical claims by civilly committed

individuals.  See, e.g., Deavers v. Santiago, 243 F. App'x 719, 722 (3d Cir. 2007); Oliver v.

Main, No. 12-3757, 2016 WL 1305292, at *8 (D.N.J. Apr. 4, 2016).

Under this jurisprudence, the professional judgment standard has no application to the

present matter.  The case has been brought by Luo on behalf of her minor son, neither of whom

has been involuntarily committed.  Luo makes no claim challenging either the level of care

received by B.L. during any civil commitment or a professional judgment by Kolbay that would

affect B.L.'s level of care.  Rather, Luo alleges Kolbay violated her right to privacy by reviewing

and transmitting B.L.'s records and her due process rights by both continuing the IEE process

after Luo appealed the Hearing Officer's decision and releasing B.L.'s records without Luo's

consent.  None of these actions constitutes the type of "professional judgment" that the Supreme

Court sought to insulate from liability under <u>Youngberg</u>.[5]  Therefore, I will sustain Luo's

objections on this point and decline to adopt this portion of the report and recommendation.

### E.      Municipal Liability Under Section 1983

Luo next challenges the Magistrate Judge's recommendation that the <u>Monell</u> claims

against the District be dismissed for failure to state a claim upon which relief may be granted.

The amended complaint sets forth multiple causes of action against the District, including:  (1) a

§ 1983 claim for deprivation of Luo's liberty right in connection with the District and Ball's

demand that Luo undergo parent training (claim one); (2) a § 1983 claim for deprivation of Luo's

liberty right in connection with the issuance of the June 26 NOREP (claim two); (3) a § 1983

claim for deprivation of Luo's liberty right in connection with the District and Ball's refusal to

give B.L. residential placement (claim three); (4) a § 1983 claim for deprivation of Luo's liberty

right in connection with the District and Ball's transmission of B.L.'s academic records to

independent evaluator Kolbay without Luo's consent (claim five); (5)  a § 1983 claim for

violation of Luo's due process rights due to the persistent efforts to conduct the IEE after Luo

appealed the Hearing Officer's order (claim six); (6) a § 1983 claim for deprivation of Luo's

---

[5]      Kolbay argues that the Third Circuit adopted the <u>Youngberg</u> professional judgment standard
in a similar context in <u>Winston v. Children and Youth Servs. of Delaware Cnty.</u>, 948 F.2d 1380
(3d Cir. 1991).  In that case, however, the Court of Appeals concluded that a child welfare
organization's parental visitation policy for children involuntarily committed to foster care did
not fall below minimum professional standards and therefore did not violate plaintiffs' rights to
due process.  <u>Id.</u> at 1391.  This case, on the other hand, involves no involuntarily committed
individual complaining about the quality of care received.
        Kolbay also contends that the Court of Appeals applied the <u>Youngberg</u> standard to a case
concerning the constitutionality of school rules governing the length of student hair in <u>Zeller v.
Donegal Sch. Dist. Bd. of Educ.</u>, 517 F.2d 600, 606 (3d Cir. 1975).  That case, however, was
decided seven years before the Supreme Court established the professional judgment rule in
<u>Youngberg</u>.

liberty right in connection with the persistent efforts to conduct the IEE after Luo appealed the

Hearing Officer's order (claim seven) and (7) a § 1983 claim for violation of Luo's due process

rights in connected with the actions of the District, Ball and Montayne to conduct the IEE,

schedule an IEP meeting without Luo's agreement, force Luo to consent to B.L's evaluation and

demand that Luo undergo parent training (claim eight).  The District and Ball jointly moved to

dismiss these claims on the theory that none of Luo's allegations constituted a violation of either

Luo's liberty interests or her due process rights.  They made no argument that Luo had not

adequately pled Monell liability as to the District.  The Magistrate Judge declined to dismiss the

claims against Ball, but *sua sponte* recommended dismissal of the claims against the District,

finding that Luo had not alleged the existence of a policy or custom that caused the constitutional

violations.[6]  Luo now objects to this decision on the grounds that (1) the court may not *sua*

---

[6]    The report and recommendation specifically stated the following with respect to the Monell claim:

> The Amended Complaint purports to state a claim against the
> District, a municipal body, apparently based on Ball's conduct.
> See Amended Complaint.  However, "a municipality cannot be
> held liable under § 1983 on a *respondeat superior* theory."  Monell
> v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690
> (1978).  Rather, in order [to] state a claim against a municipal
> body, a plaintiff must show (1) the enforcement of a municipal
> policy was (2) the "moving force" of the violation of plaintiff's
> federally protected rights.  See Polk Cty. v. Dodson, 454 U.S. 312,
> 326 (1981).  Luo has made no attempt in the Amended Complaint
> to separate the conduct of Ball from that of the District, or to allege
> that Ball's conduct was the result of a policy or custom of the
> District.  Moreover, there is no suggestion that Ball is a policy
> maker who has authority to bind the District.  Absent such
> allegations, the Amended Complaint does not state a plausible
> claim against the District.  Therefore, it is recommended that the §
> 1983 claims asserted in the Amended Complaint against the
> District be dismissed, without prejudice, in light of Luo's *pro se*
> status, and that further amendment be stayed pending resolution of
> the appeal of the Hearing Officer Decision in this case, and Luo II.

*sponte* raise a basis for dismissal not presented in a motion to dismiss and (2) the amended complaint adequately pleads a Monell claim.

As to the first argument, the Court of Appeals has noted that "[g]enerally, a district court may sua sponte dismiss a complaint under Rule 12(b)(6) after service of process only if the plaintiff is afforded an opportunity to respond." Bethea v. Nation of Islam, 248 F. App'x 331, 333 (3d Cir. 2007). Nonetheless, "although disfavored, a sua sponte dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile." Id.; see also Bynum v. Trustees of Univ. of Pa., 115 F. Supp. 3d 577, 590–91 (E.D. Pa. 2015) ("Even if a party does not make a formal motion to dismiss, we may, *sua sponte,* dismiss a complaint if its inadequacy is apparent as a matter of law."); 5B C. Wright & A. Miller, Federal Practice & Procedure, § 1357 (3d ed. 2016) (explaining that a district court, on its own initiative, may note a complaint's inadequacy and dismiss it for failure to state a claim so long as the procedure employed is fair to the parties).

In the present case, prior to the Magistrate's recommended dismissal, Luo did not have an adequate opportunity to respond to allegations regarding the sufficiency of her Monell claims against the District. Nevertheless, I find any error to be harmless because Luo has had the opportunity to raise her arguments in her objections to the report and recommendation and to fully brief the issue before me.

Turning to the question of whether the amended complaint adequately pleads a Monell claim against the District, the seminal case of Monell v. Department of Social Services, 436 U.S. 658 (1978) confirmed that "Congress *did* intend municipalities and other local government units

---

Report & Recommendation, Luo I, ECF No. 35, at 24.

to be included among those persons to whom §1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 690–91 (emphasis in original).  To establish section 1983 liability against such a governing body, the plaintiff must identify either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id.  A policy occurs when "a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996), quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). A custom is defined as "'such practices of state officials so permanent and well-settled as to constitute law,'" which can be established by showing the policymaker's knowledge and acquiescence to the custom.  Id., quoting Andrews, 895 F.2d at 1480.  Alternatively, a custom or policy may be established from a failure to train, supervise or otherwise act where that failure reflects a deliberate indifference of officials to the rights of persons that come into contact with these municipal employees.  City of Canton v. Harris, 489 U.S. 378, 388 (1989); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).[7]

---

[7]     As succinctly summarized by the Court of Appeals, three situations exist where acts of a government employee are deemed to be the result of a policy or custom of the governmental employer:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. . . .  The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. . . Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some

The amended complaint fails to adequately plead a <u>Monell</u> claim.  The document focuses on the conduct and actions of Ball, specifically pleads that the alleged constitutional violations occurred solely at the hands of Ball, remarks that "defendant Ball made the decision by himself to demand plaintiff to take a training under District's supervision," Am. Compl., <u>Luo I</u>, ¶ 118, and asserts that "[t]he official decision in the IEP, made by defendant Ball has deprived Luo of the liberty right without due process of laws."  <u>Id.</u>  ¶ 121.  The District, however, cannot be liable on a respondeat superior basis for the actions of its employees.  Moreover, Luo has not pled that Ball is a "decisionmaker possessing final authority to establish municipal policy" with respect to the action, such that the District could be held liable for his actions.  <u>Beck</u>, 89 F.3d at 971 (3d Cir. 1996).  Finally, Luo has failed to identify any policy statement, ordinance, regulation, or decision officially adopted and promulgated by the District's officers.

In an effort to overcome the amended complaint's shortfalls, Luo identifies the following allegations from which she asks for an inference of policy or custom:

- "On June 26, 2014, defendant Ball made the Specially Designed Instruction ('SDI'), as official decision in the IEP, that demanded plaintiff to take to take parent training, and also informed plaintiff that the official decision was effective on the same date June 26, 2014."  Am. Compl., <u>Luo I</u>, ¶ 120.

---

> action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

<u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation marks and citations omitted).

- "IEP is an official document of District, and District is liable for its official document. Accordingly, District is liable for the SDI that demanded plaintiff to take a District-supervising training." Id. ¶ 124.

- "The NOREP was endorsed by the Superintendent of District, Dr. Michael Christian. Superintendent is a policymaker of the District, and District is liable for the issuance of the NOREP." Id. ¶ 129.

- "The 4010 form is under the title of Superintendent of school district, and is a District policy." Id. ¶ 137.

- "District contracted defendant Kolbay as an independent evaluator." Id. ¶ 148; see also id. ¶¶ 156, 165.

- "Plaintiff already appealed the Hearing Officer's order for IEE, and the Hearing Officer's order for IEE is not final. Supposedly, District should cease any attempts to conduct the IEE. However, District persisted in conducting the IEE to coerce plaintiff to respond [to] District's reckless conduct without any legal basis." Id. ¶ 170.

Such allegations fall far short of alleging a District policy, practice or custom that caused the alleged constitutional violations. Rather, they make the broad leap to suggest that simply because Ball was acting in his capacity as a District employee, because the District hired Kolbay and Montayne and because special education matters fall within the ambit of the District's authority, the District bears responsibility for the resulting harm. Such "[v]ague assertions" of policy or custom are not sufficient to impose liability. Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).

In light of the foregoing, I find that Luo has failed to adequately plead a claim against the District. Cognizant of Luo's pro se status, however, I will grant the District's motion to dismiss

the claims with leave to amend, as set forth in the accompanying order.  Luo shall have the

opportunity to replead her <u>Monell</u> claims in a manner that clearly identifies a policy, practice or

custom by the District that proximately caused the constitutionally violative actions.

## II.     *LUO II*

In the report and recommendation pertaining to <u>Luo II</u>, Magistrate Judge Wells proposed

several rulings.  First, she stated that Luo's motion or judgment on the pleadings as to the

District's complaint should be denied.  Second, she found that the District's motion to dismiss

Luo's counterclaim should be granted both for lack of subject matter jurisdiction over the

counterclaim and on the merits.  Finally, she recommended that the third-party defendants'

motion to dismiss the third-party complaint be granted.  Luo filed objections to all of these

rulings, which I now consider separately.

### A.     **Luo's Motion for Judgment on the Pleadings as to District's Complaint**

In recommending denial of Luo's Motion for Judgment on the Pleadings with regards to

the District's complaint in <u>Luo II</u>, Magistrate Judge Wells held:

> As described in the Complaint, this action is in the nature of an
> appeal challenging the administrative decision in which the
> Hearing Officer determined that the District had violated the
> procedural rights of B.L's parents with respect to B.L's education.
> . . .The allegations in the Complaint . . . describe the events giving
> rise to the administrative hearing, with reference to the Hearing
> Officer Decision.  Finally, the Complaint identifies the issues on
> appeal, namely whether the Hearing Officer Decision was contrary
> to the IDEA and its implementing regulations, or unsupported by
> the facts contained in the administrative record.  The foregoing
> allegations are sufficient to sustain an administrative appeal, in that
> they satisfy Rule 8(a)(2) of the Federal Rules of Civil Procedure
> and *Twombly*, by providing a short and plain statement of the claim
> that "give[s] the defendant fair notice of what the claim is and the
> grounds upon which it rests."
>
> Though Luo contends that the District is required to fully explain
> each legal theory upon which its request for relief is based, this is

27

> not the law.  *See Seltzer v. Dunkin' Donuts, Inc.*, 2011 WL
> 1532398, at *4 (E.D. Pa. Apr. 21, 2011) (quoting *Skinner v.
> Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not be 'a
> model of the careful drafter's art,' nor must it 'pin plaintiff's claim
> for relief to a precise legal theory,' as long as it features 'a
> plausible "short and plain" statement of the plaintiff's claim.'")).

Report & Recommendation, <u>Luo II</u>, ECF No. 23, at 8–9.  Luo now argues that this

recommendation is erroneous because:  (1) the District's allegation that the November 18, 2014

IEE was based solely on a review of B.L.'s educational records proves that it was inappropriate,

thereby substantiating the Hearing Officer's decision; (2) the District's recitation of the factual

background of only one of the four due process claims is inadequate and (3) the District failed to

plead factual allegations to prove its allegation that the Hearing Officer's decision is contrary to

clearly established law.

I find that the District's complaint survives a motion for judgment on the pleadings.  As

noted above, the general rules of pleading require only a short and plain statement of the claim

showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a).  As a general rule, "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" and  "only a complaint that states a plausible claim for relief survives a motion to

dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Id.</u>

In this case, however, "[t]he pleading requirements of Rule 8 must be read in light of the

fact that this is an appeal of an administrative . . . decision in which this Court is required to

defer to factual findings . . . unless other nontestimonial extrinsic evidence leads to a different

conclusion." <u>Dumont Bd. of Educ. v. J.T. ex rel. I.T.</u>, No. 09-5048, 2010 WL 199630, at *2

(D.N.J. Jan. 14, 2010)  "Thus, the Court and Defendants, upon filling of a complaint, have

notice of the facts not only in the complaint but also the record below," which "is different than an initial non-appeal complaint, where the complaint is the only document informing a defendant of the claim being asserted." Id.  The Third Circuit directs "district court[s] to apply a nontraditional standard of review when considering an appeal from a state administrative decision under IDEA." Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 241 (3d Cir. 2009).  This standard "requires the court to consider the '[f]actual findings from the administrative proceedings . . . prima facie correct' and if the court fails to adopt those findings, it must explain its reason for departing from them." Id.  If a district court agrees to hear additional evidence, it is "free to accept or reject the agency findings," based on the "new, expanded record." S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003) (internal citation and quotation marks omitted).

Under this standard, Luo's objections to the report and recommendation are meritless.  First, because the record below is included within the complaint, the District did not need to include extensive factual allegations to provide a basis for its challenges to the Hearing Officer's decision.  Second, Luo puts forth no case law to establish that an IEE based on a pure paper review of a student's records is *per se* invalid.  Finally, contrary to Luo's argument, the District specifically identified IDEA as the clearly established law with which the Hearing Officer's decision conflicted.  As I find that the amended complaint appropriately pleads a plausible challenge to the Hearing Officer's decision, I decline to dismiss it for failure to state a claim upon which relief may be granted.

### B.     Dismissal of Counterclaims

In the report and recommendation, Magistrate Judge Wells determined that Luo's counterclaims should be dismissed because (1) the court lacks subject matter jurisdiction over

29

the state law claims and (2) the counterclaims do not state a claim for which relief can be granted.  Because I agree that I lack subject matter jurisdiction over the counterclaims, I focus solely on that issue.

As a primary matter, Magistrate Judge Wells found no independent basis for jurisdiction over Luo's counterclaims because neither the requirements for diversity jurisdiction nor the requirements for federal question jurisdiction were present.  Shen then determined that the counterclaims were not compulsory under Federal Rule of Civil Procedure 13(a) because the District's complaint was an appeal of an administrative due process hearing—review of which requires the district court to apply a modified de novo standard—while Luo's counterclaims asserted state law causes of action based on conduct engaged in by the District after the Hearing Officer released his decision.  According to the Magistrate Judge, resolution of those counterclaims "will require discovery wholly unrelated to the issuance of the Hearing Decision and resolution of legal issues that are wholly unrelated to the review of that decision."  Report & Recommendation, Luo II, ECF No. 23, at 11.  She concluded that because the counterclaims assert state law causes of action based on transactions and occurrences distinct from those forming the basis of the complaint, they were permissive and must be dismissed.  Luo now objects.

A permissive counterclaim requires a basis of federal jurisdiction independent of the opposing party's claim.  Aldens Inc. v. Packel, 524 F.2d 38, 52 (3d Cir. 1975).  A compulsory counterclaim, on the other hand, does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim.  Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 988 (3d Cir. 1984) (citations omitted).  For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the

claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims." Fed. R. Civ. P. 13(a). That is, the counterclaim must bear a "logical relationship" to the claim such that separate trials would "involve a substantial duplication of effort and time." Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389–90 (3d Cir. 2002). "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." Id. "[M]ere tangential overlap of facts is insufficient, but total congruity between operative facts of the two cases is unnecessary." Nanavati v. Burdette Tomlin Mem. Hosp., 857 F.2d 96, 105 (3d Cir. 1988).

Luo contends that her counterclaims are compulsory because without the District's decision to appeal the Hearing Officer's decision and name Luo in the complaint, Luo could not have brought either of her counterclaims against the District. As such, she reasons that her counterclaims stem directly from the "transaction or occurrence" of the District's complaint and require no additional discovery.

Despite a relationship between the two lawsuits, however, I find no meaningful overlap between the facts or occurrences underlying the claims at issue. Turning first to Luo's counterclaim for malicious abuse of process, the common law torts of both malicious use of process and abuse of process are subsumed within the general scope of the Dragonetti Act. U.S. Express Lines Ltd v. Higgins, 281 F.3d 383 (3d Cir. 2001), citing 42 Pa. Cons. Stat. §8351;[8] see

---

[8]   (a) Elements of action. - A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

also Access Fin. Lending Corp. v. Keystone State Mortg. Corp., No. 96-191, 1996 WL 544425, at *3 (W.D. Pa. Sept. 4, 1996).  Under this Act, "the allegedly abusive process that forms the basis for an abuse of process claim must be completed before a litigant may bring an abuse of process claim; this is so 'whether it allegedly encompasses the entire litigation, or a portion thereof . . . .'"  Giordano v. Claudio, 714 F. Supp. 2d 508, 533–34 (E.D. Pa. 2010), quoting Access Fin. Lending, 1996 WL 544425, at *5 & n.3 ("The assertion, by way of a counterclaim, that the underlying litigation as a whole constitutes an abuse of process fails to state a claim which is ripe for adjudication. By definition, a lawsuit in its entirety cannot constitute an abuse of process when it has not yet been concluded."); see also Reitz v. Dieter, 840 F. Supp. 353, 355–56 (E.D. Pa. 1993) (holding that malicious use of civil proceedings counterclaim arose from legal proceeding in which it was brought and, therefore, is a permissive counterclaim).  As the crucial facts giving rise to Luo's malicious abuse of process claim will not arise until the completion of the District's lawsuit, the complaint and the counterclaim stem from different occurrences and have no logical relationship.  In turn, the counterclaim is not compulsory and must be dismissed for lack of jurisdiction.

Similarly, Luo's counterclaim for breach of the implied covenant of good faith and fair dealing is not part of the same transaction or occurrence as the District's complaint.  As set forth above, the District's action is an appeal from the Hearing Officer's decision and rests entirely on the record before the Hearing Officer.  Luo's counterclaim, on the other hand, alleges that the

---

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. § 8351.

District breached its implied covenant when it appealed from Hearing Officer's decision despite the fact that Luo consented to the District's request for a reevaluation of B.L. and the District actually conducted that reevaluation.  Such a claim requires that Luo establish the existence of some contractual relationship between her and the District—wherein the District would refrain from appealing the Hearing Officer's decision—and a subsequent breach of that contract.[9]  See Zaloga v. Provident Life & Acc. Ins. Co. of Am., 671 F. Supp. 2d 630–32 (M.D. Pa. 2009) ("Because the covenant of good faith and fair dealing arises from the contract and not due to the mere relationship of the parties . . . a breach of the covenant sounds in contract, not tort.").  Such facts have no meaningful overlap with the facts and law regarding the underlying complaint and whether the Hearing Officer correctly adjudicated B.L.'s placement.

Having found that neither of Luo's counterclaims are compulsory under Rule 13(a) of the Federal Rules of Civil Procedure, there must be an independent basis for my jurisdiction over those claims in order to proceed with them.  As correctly found by Magistrate Judge Wells, no such basis exists.  Accordingly, the counterclaims must be dismissed with prejudice.

### C.     Dismissal of Third-Party Complaint

In Luo II, Luo also brings a third-party complaint against the law firm Sweet Stevens Katz Williams LLP, attorney Jonathan P. Riba and attorney Sharon W. Montanye.  She alleges that the third-party defendants served as counsel for the District in their complaint and commenced the action to appeal the Hearing Officer's decision.  As a result of these actions, Luo

---

[9]     The sole relevant allegation in the counterclaim asserts that "[a]t an off-record break, the Hearing Officer asked Counterclaimant [Luo] if Counterclaimant would give District a consent for a reevaluation, Counterclaimant agreed to do so.  District and Counterclaimant agreed to have a reevaluation after the IEE."  Answer & Countercl., Luo II, ECF No. 9, ¶ 61.  Luo makes no allegation that the District agreed to forego an appeal from the Hearing Officer's decision in exchange for Luo's consent.  Although Luo seeks leave to amend the counterclaim to add such allegations, the breach of a separate contractual relationship by the District would still not convert this claim into a compulsory counterclaim.

contends that third-party defendants are liable for malicious abuse of process and for violation of Luo's liberty and substantive due process rights under 42 U.S.C. § 1983. The Magistrate Judge recommended that both claims be dismissed under Rule 12(b)(6) and Luo now objects to the report and recommendation.

### 1.  Malicious Abuse of Process

As noted above, the common law tort of abuse of process is defined as the perversion of legal process after it has begun "primarily to accomplish a purpose for which it is not designed." Werner v. Plater–Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002). Hence, a malicious use of process claim is flawed either if the underlying civil proceeding has not been terminated or if termination is not favorable to the complaining party. Access Fin. Lending, 1996 WL 544425, at *3.

In this case, the underlying civil proceeding on which Luo's malicious abuse of process is premised is the present civil action. This proceeding has obviously yet to be terminated. Accordingly, Luo cannot sustain a claim for malicious abuse of process at this juncture.

### 2.  Violation of Liberty and Due Process Rights Under § 1983

The Magistrate Judge also recommended dismissal of Luo's § 1983 claims against the third-party defendants on the ground that they are not state actors. Luo objects that the third-party defendants abused the process under the guise of being officers of the District and, therefore, are subject to liability.

I have already addressed a similar claim in detail above with respect to Luo I and, for those identical reasons, I will deny Luo's objection and adopt the report and recommendation on this claim. As explained previously, a plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured

by the Constitution or laws of the United States.  42 U.S.C. § 1983; <u>Anderson v. Davila</u>, 125

F.3d 148, 159 (3d Cir. 1997).  A private attorney acting within the scope of the attorney-client

relationship is not acting under color of state law for the purposes of a plaintiff's civil rights

allegations.  <u>Heffernan v. Hunter</u>, 189 F.3d 405, 413–14 (3d Cir. 1999).

  The allegations against third-party defendants in this case describe nothing more than

private attorneys acting within the scope of the attorney-client relationship.  According to the

third-party complaint, the third-party defendants commenced the action "on behalf of the

district" and named Luo as a co-defendant "on behalf of the district."  Third-party Compl., <u>Luo

II</u>, ECF No. 11, ¶¶ 4–5.  The third-party complaint contains no allegations that they acted outside

the scope of their duties as counsel for the District or in their own interests.  Therefore, I will

adopt the report and recommendation on this claim as well.

## III. *LUO III*

  Luo initiated the third civil action in these matters against the District, Ball, Schneider

and Montayne setting forth the following claims:  violation of equal protection rights by the

District and Ball (claim 1); violation of liberty rights by the District and Ball (claims 2, 5, 6);

malicious abuse of process by the District, Montayne and Ball (claim 3); violation of substantive

due process rights by the District and Ball (claim 4); breach of the duty of good faith and fair

dealing by the District and Ball (claim 7); defamation by the District and Ball (claim 8);

harassment by the District and Ball (claim 9); violation of liberty rights by the District and

Schneider (claim 10); violation of substantive due process rights by the District and Schneider,

defamation by the District and Schneider (claim 12) and negligence by the District and Schneider

(claim 13).  Magistrate Judge Wells recommended that all claims against Montayne be dismissed

with prejudice; claims one, three, five and seven to thirteen be dismissed with prejudice; and

claims two, four and six be consolidated with like claims already presented in Luo I.  In connection with these recommendations, Luo has brought a series of objections, which I now consider.

### A.      Dismissal of Equal Protection Claim (Claim 1)

Claim one in Luo III asserts that, on June 26, 2014, Ball included in the IEP a provision for parent training without the parents' agreement.  Compl., Luo III, No. 15-4248, ¶ 111.  The claim states that "[i]n the similarly situated situation, Ball treated plaintiff differently" and "violated plaintiff of the right to equal protection."  Id. ¶¶ 115–16.  Magistrate Judge Wells found that the allegations fail to state a plausible equal protection claim.

I agree.  Under the Equal Protection Clause, all persons are not entitled to be treated identically; rather the concept of equal protection stands for the principle that "all persons similarly situated should be treated alike."  Artway v. Attn'y Gen. of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996), quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To state a claim under the Equal Protection Clause, a § 1983 plaintiff can allege either:  "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class," Shoemaker v. City of Lock Haven, 906 F. Supp. 230, 238 (M.D. Pa. 1995) quoting Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990) (further quotations omitted), or that she faced discrimination under the "class of one" theory announced in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam).  According to the "class of one" theory, a plaintiff states a claim for violation of the Equal Protection Clause when he "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id. at 564; see also Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

In the present case, Luo relies on a "class of one" theory, but has not identified any similarly-situated individuals whom the District treated differently.  Luo responds that her complaint pleads that "IEP members" are similarly-situated, meaning that she and the District, both of whom are IEP members, are similarly-situated for purposes of the equal protection claim. She reasons that she was treated differently than the District because when the District did not want residential treatment, Ball did not include it in the IEP, but when Luo did not want parent training, Ball included it in the IEP.

Luo's argument misunderstands the concept of similarly-situated parties.  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"  Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008).  Under that definition, Luo and the District do not qualify as "similarly situated" for purposes of an equal protection claim as the District is charged with developing the IEP for students and is the party accused of the differential treatment.  See Compl., Luo III ¶¶ 117–18.  Those similarly situated to Luo in this matter are other parents with children in the IEP process.  See Chambers ex rel. Chambers v. Sch. Dist of Phila Bd. of Ed., 587 F.3d 176, 196–97 (3d Cir. 2009) (holding, in an equal protection claim brought in the context of an IDEA claim, that other students in the IEP process are "individuals similarly situated").  Luo identifies no similarly-situated students that were treated differently by the District in the IEP process.  Having failed to do so, the District's motion to dismiss her class-of-one equal protection claim must be granted with prejudice.  See Prof'l Dog Breeders Advisory Council, Inc. v. Wolff, 752 F. Supp. 2d 575, 587 (E.D. Pa. 2010).

## B.    Right to Contract Claim

Count II of the Luo III complaint asserts that the District's requirement for parent training as part of the IEP violated Luo's right to contract.  Compl., Luo II ¶¶ 125–28.  Luo brought an

identical claim in <u>Luo I</u> based on inclusion of the parent training provision in the June 26, 2014

and December 18, 2014 IEPs.  Magistrate Judge Wells determined that this claim depends on the

identical conduct set forth in <u>Luo I</u>—the requirement for parent training—but simply includes

additional instances of that IEP requirement in January and March 2015.  In turn, Magistrate

Judge Wells recommended that, under the doctrine of claim-splitting, the claim be consolidated

with <u>Luo I</u>. [10]  Luo now objects to such consolidation.

"Claim-splitting," also known as the "rule against duplicative litigation [,] [has been

described as] the 'other action pending' facet of the res judicata doctrine."  <u>Prewitt v. Walgreens

Co.</u>, No. 12-6967, 2013 WL 6284166, at *4–5 (E.D. Pa. Dec. 2, 2013), <u>citing</u> <u>Power Integrations,

Inc. v. Fairchild Semiconductor Int'l Inc.</u>, No. 08–309, 2009 WL 2016436, at *3 (D. Del. July 9,

2009).  "The longstanding rule against improper claim splitting prohibits a plaintiff from

prosecuting his case piecemeal and requires that all claims arising out of a single alleged wrong

be presented in one action."  <u>Prewitt</u>, 2013 WL 6284166, at *4.  In the Third Circuit, a plaintiff

has "no right to maintain two separate actions involving the same subject matter at the same time

in the same court against the same defendant."  <u>Walton v. Eaton Corp.</u>, 563 F.2d 66, 70 (3d Cir.

1977).  "The doctrine[] promotes judicial economy by protecting defendants from having to

defend against multiple identical, or nearly identical, lawsuits and by protecting courts from

having to expend judicial resources on piecemeal litigation."  <u>Prewitt</u>, 2013 WL 6284166, at *5.

When a court learns that two possibly duplicative actions are pending on its docket,

"consolidation may well be the most administratively efficient procedure."  <u>Walton</u>, 563 F. 2d at

70.  The Court of Appeals has explained "[i]f the second complaint proves to contain some new

matters, consolidation unlike dismissal of the second complaint without prejudice or staying the

---

[10]     In <u>Luo I</u>, Magistrate Judge Wells recommended that the District's motion to dismiss the §
1983 claims be granted without prejudice to leave to amend.

second action will avoid two trials on closely related matters." Id. at 71. "If, on the other hand, the second complaint proves to contain nothing new, consolidation of the two actions will cause no harm provided that the district court carefully insures that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." Id.

In the present action, consolidation is clearly the most efficient and fair procedure. Luo III contends that the District's inclusion of parent training in the "January 2, 2014, December 18, 2014, January 16, 2015, and March 17, 2015" IEPs violated Luo's right to contract. Compl., Luo III, ¶¶127–28. This claim is substantially identical to the Luo I claims regarding the District's inclusion of parent training in the June and December 2014 IEPs. In fact, the 2015 IEPs are simply a continuation of the ongoing dispute between Luo and the District over B.L.'s IEP.[11] Allowing both claims to proceed simultaneously would allow piecemeal litigation and undermine any semblance of judicial economy. Therefore, I will adopt this portion of the report and recommendation and permit Luo to amend her complaint in Luo I to include a right to contract claim setting forth all pertinent factual allegations.[12]

---

[11]    Luo argues that her claim in Luo III only stems from the occurrences on January 16, 2015 and March 17, 2015, with the other dates given only as background to the claim. She requests leave to amend her Luo III complaint to so limit the claim. This course of action, however, would still allow two virtually identical claims with significantly overlapping facts to proceed in separate actions simultaneously. Consolidation will have no adverse impact on Luo's claims as she will be able to amend her complaint to include all instances where the District added a parent training component to the IEP.

[12]    Although some of the events in Luo III occurred subsequent to the filing of Luo I, those events are simply additional occurrences in support of claims already set forth in Luo I. Federal Rule of Civil Procedure 15(c)(1)(B) allows relation back of any amendments that "assert[] a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." Id.

### C.      Malicious Abuse of Process Claim Against the District, Ball and Montayne

In claim three of the complaint, Luo asserts that on June 26, 2014, December 18, 2014, January 16, 2015 and March 17, 2015, Ball issued Notices of Recommended Education Placement (NOREPs) "to compel plaintiff to perform District's demands for parent training." Compl., Luo III, ¶ 132.  She argues that use of the NOREPs to force plaintiff into parent training constituted a malicious abuse of process by Ball, the District and Montayne.

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989), citing Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977).  "'The gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.'"  Dunne v. Twp. of Springfield, 500 F. App'x 136, 139 (3d Cir. 2012), quoting Restatement (Second) of Torts § 682 cmt. a (1965).

Upon consideration of Luo's claim, Magistrate Judge Wells determined that the claim was meritless as a matter of law because (1) there was no "process" that was abused and (2) there was no "perversion of the process."  She therefore recommended that the claim be dismissed without prejudice.  I concur on both grounds.

First, Magistrate Judge Wells appropriately concluded that the issuance of NOREPs does not constitute "process" within the context of a malicious abuse of process claim.  Luo attempts to argue that "legal process" is not limited to "judicial process," but means any process based on, concerned with or permitted by law.  Luo's Objections, No. 15-4248, ECF No. 15, at 11.  She

goes on to reason that abuse of process may include "abuse of IDEA process."  Id.  However, Luo does not cite—and I cannot find—any authority that allows a malicious abuse of process claim to rest on a school district's issuance of NOREPs or similar administrative action. NOREPS do not involve any criminal or civil proceedings or other form of legal process. Rather, a NOREP is a form completed at the end of the IEP development process and must be provided to parents whenever a school district proposes to change the student's program or placement.  The parents can then either sign the NOREP, thereby agreeing to the placement decisions contained therein, or request a meeting, mediation or due process hearing.  20 U.S.C. § 1415(b)(3), (c)(1); see also 34 C.F.R. § 300.503.  As no legal process is implicated, Luo's claim of malicious abuse of process cannot stand.

Second, even assuming the NOREPs could be construed as legal process, the Magistrate Judge correctly found that no perversion of the legal process occurred.  As noted above, the use of a NOREP is established by 20 U.S.C. § 1415, which was designed to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies."  Id. § 1415(a).  In other words, the NOREP is nothing more than a written notice about the underlying decision made by the school district in the IEP.  Contrary to having a coercive effect, it informs parents that if they do not agree with the IEP decision, they have "protection under the procedural safeguards" of the statute.  Id. § 1415(c)(1)(C).

In the present matter, the District issued the NOREP to inform Luo of its decision to require parental training in B.L.'s IEP.  Luo argues that by requiring her to respond and object to the NOREP in order to avoid implementation of an improper IEP, the District was "coercing" her

into taking action.  Such a system, however, is far from coercive.  As explained by Judge

Gawthrop of this court:

> [T]hat is more analogous to the "coercion" visited upon a customer
> by a book club, where the rules are that failure timely to decline
> the offered book results in book—and bill—arriving by the end of
> the month. That concededly does place some impetus upon the
> customer to respond, but to characterize that postal-R.S.V.P.
> situation as "coercive," would be to stretch the term beyond its true
> meaning.  There is a difference between pesky annoyance and
> forcible coercion.  So also is that the case at bar.  Coercion this is
> not.

Parents United for Better Schools, Inc. v. Sch. Dist. of Phila. Bd. of Educ., 978 F. Supp. 197, 211

(E.D. Pa. 1997), aff'd 148 F.3d 260 (3d Cir. 1998).  Thus, the mere fact that Luo was required to

respond to the notice in order to register her disagreement with the IEP decision does not

transform it into a perversion of the process.

In short, I agree with the Magistrate Judge that Luo has not and cannot state a malicious

abuse of process claim based on the District's issuance of NOREPs.  I shall therefore overrule

Luo's objection on this point, adopt the report and recommendation and dismiss this claim with

prejudice.

### D.    Substantive Due Process Claim

Claim four of the complaint alleges a substantive due process claim based on Ball's use

of "two hidden documents" containing hearsay, as well as the results of the "unapproved

assessment,"[13] to make his decision that B.L. has skill deficits at home.  Compl., Luo III ¶¶ 144–

45.  Ball presented them for the first time at a hearing, but they were stricken by the Hearing

Officer.  Id. ¶¶ 64, 66.  Ball then purportedly provided the documents to Kolbay with instructions

for Kolbay to include them in her IEE report, but  Kolbay's report was similarly stricken by the

---

[13]    These documents are described in more detail at paragraphs fifty-seven through eighty-six
of the Luo III complaint.

Hearing Officer.  Id. ¶¶68–69, 71.  The complaint asserts that Ball's conduct shocked the conscience and rendered both him and the District liable.  Id. ¶¶ 148–50.

Magistrate Judge Wells found that both portions of Luo's substantive due process claim arose from the identical series of events supporting Luo I.  First, to the extent the claim is based on "hidden documents," Judge Wells remarked that these documents were presented at the August 27, 2014 hearing before Hearing Officer Skidmore.  "The gravamen of Luo I is the various ways the District and ball deprived Luo of his constitutional rights by their efforts to include a parent training requirement in B.L.'s IEP."  Report & Recommendation, Luo III, ECF No. 12, at 18.  Since Luo became aware of the documents no later than the August 27, 2014 hearing, these actual allegations could have been raised in Luo I, making the present claim impermissible under the claim-splitting doctrine.  In turn, she recommended that the claim be consolidated with Luo I.

Second, to the extent the claim is based on the "unapproved assessment," Magistrate Judge Wells presumed that the referenced assessment was the March 2015 assessment performed by Schneider to which Luo had consented.  Id. at 19.  She went on to find that although Luo could not have included the conduct giving rise to this claim in the amended complaint in Luo I, "it appears that Luo is highlighting additional conduct engaged in by Ball—relying on inappropriate evidence—to support his finding that B.L. showed skill deficits at home, all in an effort to include a recommendation for parent training in B.L.'s IEP."  Id.  As Luo I alleges claims based on the District's and Ball's conduct in this regard, Magistrate Judge Wells recommended that this portion of claim four also be consolidated with Luo I.

I likewise find consolidation to be the appropriate remedy.  Federal Rule of Civil Procedure 42(a) grants trial courts broad discretion to "streamline and economize pretrial

proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues" by consolidating related cases.  In re TMI Litig., 193 F.3d 613, 724 (3d Cir. 1999).  The rule states that a court may consolidate such cases or "issue any other orders to avoid unnecessary cost or delay" if the actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  An order consolidating related cases has no bearing on the substantive questions of law and fact underlying those actions.  A district court has "broad discretion" when determining whether consolidation is appropriate.  Farahmand v. Rumsfeld, No. 02-1236, 2002 WL 31630709, at *2 (E.D. Pa. Nov. 20, 2002).

As recognized by Magistrate Judge Wells, claim four's allegations in the present action involve multiple common questions of law and fact with the claims in Luo I.  Both causes of action challenge Ball's inclusion of a parent training requirement in the IEP.  The allegations of claim four appear to be nothing more than additional factual allegations in support of the claim set forth as "Claim 2" of Luo I.  To separately litigate such claims via two different actions would result in duplicative efforts and potentially conflicting outcomes.  As Luo will be permitted to file a second amended complaint in Luo I, I will dismiss claim four with prejudice, order that Luo I and Luo II be consolidated and direct that Luo include all desired claims in a second amended complaint in Luo I.

### E.    Liberty Right Claim Against the District and Ball (Claim 5)

Claim five of Luo III asserts a violation of Luo's right to privacy as follows:

> 152.    What happened at home, especially regarding how the child was raised or what the child did or the child's ability at home, was protected under the liberty right to privacy.
> 153.    Ball made decisions for comparisons of the child's ability at home and at school without plaintiff's consent.
> 154.    Ball also made the false statement that the child lacked skills at home.
> 155.    Ball had violated plaintiff of the liberty right.

> 156.    District gave Ball the complete authority to make decision
> of special education.  Ball's decision is final such that District is
> liable for Ball's decision.
> 157.    Wherefore, defendants District and ball are liable for
> deprivation of plaintiff's liberty right under Section 1983.

Compl., <u>Luo III</u>, ¶¶ 152–57.  Magistrate Judge Wells recommended dismissal of this claim

without prejudice because, even construing these allegations liberally, this claim was "woefully

inadequate" under Federal Rule of Civil Procedure 8(a)'s requirement of a "short and plain

statement of the claim" and did not state a claim for which relief can be granted.  Report &

Recommendation, <u>Luo III</u>, ECF No. 12, at 20.

I must disagree with this recommendation.  "[T]he right not to have intimate facts

concerning one's life disclosed without one's consent" is "a venerable [one] whose constitutional

significance we have recognized in the past."  <u>Bartnicki v. Vopper</u>, 200 F.3d 109, 122 (3d Cir.

1999), <u>citing</u> <u>Paul P. v. Verniero</u>, 170 F.3d 396 (3d Cir. 1999) (collecting cases), <u>aff'd</u>, 532 U.S.

514 (2001).  "In determining whether information is entitled to privacy protection, [this Court]

ha[s] looked at whether it is within an individual's reasonable expectations of confidentiality.

The more intimate or personal the information, the more justified is the expectation that it will

not be subject to public scrutiny."  <u>Fraternal Order of Police v. City of Phila.</u>, 812 F.2d 105, 112–

13 (3d Cir. 1987).  The constitutional right to privacy extends to minors.  <u>See</u> <u>Application of</u>

<u>Gault</u>, 387 U.S. 1, 13 (1967).

Liberally construing the allegations of the complaint, particularly in light of Luo's <u>pro se</u>

status, I find that Luo has pled the elements of a privacy claim.  The complaint alleges that

around June 2014, Ball misled two of B.L.'s providers to make comparisons of school and home

without informing Luo.  Compl., <u>Luo III</u>, ¶ 57.  Ball then disclosed those reports during a

subsequent hearing and contended that B.L. has skill deficits at home.  Id. ¶ 64.  Such allegations

constitute a short and plain statement of the grounds upon which Luo seeks relief.

Nonetheless, I again find that this claim is closely related to claims in Luo I.  Luo I

challenges Ball's actions obtaining information about B.L. and using that information to include

in the IEP a requirement for parent training.  Luo's privacy claim shares a common core of facts

with Luo I and contests Ball's actions under a new theory.  Litigating these claims in separate

actions undermines any notions of judicial economy.  Therefore, I will likewise order this claim

to be consolidated with Luo I.

### F.        Liberty Right Claim Against the District and Ball (Claim 6)

Claim six asserts that Luo has a liberty right to pursue knowledge and, by requiring that

she participate in parent training, Ball and the District deprived her of that right.  Compl., Luo

III, ¶¶ 158–64.  Magistrate Judge Wells remarked that this claim factually duplicates another §

1983 claim in Luo I under a different theory, making it impermissible under the claim-splitting

doctrine.  Luo again objects.

As set forth above, Luo I focuses substantially on alleged constitutional violations related

to the requirement for parent training in B.L.'s IEP.  Claim six of Luo III makes identical

allegations.  As neither defendants nor the court should have to litigate two nearly identical

lawsuits, I agree that this claim must be consolidated with Luo I.

### G.        Breach of Good Faith and Fair Dealing (Claim 7)

In claim seven, Luo alleges that Ball, as supervisor of the District and in change of IDEA

implementation, acted in an inappropriate, arbitrary and careless manner that violated the duty of

good faith and fair dealing.  Id. ¶¶ 168–69.  Magistrate Judge Wells found no contractual

relationship between the parties and, in turn, no implied covenant of good faith and fair dealing.

Pennsylvania law recognizes a general duty of good faith and fair dealing in the performance of a contract. Stewart v. SWEPI, LP, 918 F. Supp. 2d 333, 343–44 (M.D. Pa. 2013). In order to plead such a cause of action, "a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract other than the covenant of good faith and fair dealing, and that resultant damages were incurred by plaintiff." CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) (quotations omitted). A claim for breach of a covenant of good faith and fair dealing may not be maintained as an independent cause of action separate from the breach of contract claim. Id. at 369.

In an effort to create this contractual duty, Luo suggests that IDEA constitutes a "public contract" between the District and the state. The IDEA, however, is simply a statute that requires States receiving federal funding to provide a free appropriate public education ("FAPE") to all disabled students. 20 U.S.C. § 1412(a)(1)(A); see also Ferren C. v. Sch. Dist. of Phila., 612 F.3d 712, 717 (3d Cir. 2010). No contract exists,[14] let alone a contract that imposes a duty of

---

[14]    Luo cites to Barnes v. Gorman, 536 U.S. 181 (2002) for the proposition that the District has an enforceable "contractual obligation" under the IDEA, and a plaintiff can seek a remedy when the District fails to perform that obligation. Barnes does not stand for any such principle. In that case, the Supreme Court simply recognized that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Id. at 189 (quotations omitted). It went on to hold that because punitive damages are not compensatory, they are not included within this general rule. Id. Nothing in that case discussed whether IDEA was effectively a public contract that created a duty of good faith and fair dealing under state law towards the parent of child seeking a free and appropriate public education.

good faith and fair dealing on the District towards Luo.  Therefore, I will dismiss this claim with prejudice.

### H.        Defamation Claims (Claims 8 and 12)

Claims eight and twelve of <u>Luo III</u> set forth allegations of defamation against Ball, the District and Schneider.  In claim eight, Luo contends that Ball publicly made the defamatory statement that B.L. has skill deficits at home, which allegedly damaged Luo's reputation. Compl., <u>Luo III</u>, ¶ 177.  In claim twelve, Luo avers that Hearing Officer Schneider made the false statement that B.L. is more independent at school than at home, which damaged Luo's reputation and caused people to view her negatively.  <u>Id.</u> ¶ 204.  Magistrate Judge Wells recommended that these claims be dismissed on immunity grounds and Luo now objects.

As correctly noted by Magistrate Judge Wells, the Pennsylvania Political Subdivision Tort Claims Act (Tort Claims Act) provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541.   "The clear intent of the Tort Claims Act was to insulate the government from exposure to tort liability," so "[t]ort immunity is a non-waivable, absolute defense."  <u>McShea v. Phila.</u>, 995 A.2d 334, 341 (Pa. 2010).  This sweeping immunity bars "any suit involving an injury, whether the injury is physical, mental, reputational or economic, . . . unless the suit falls within one of the eight exceptions . . . contained in section 8542(b)."  <u>E–Z Parks, Inc. v. Phila. Parking Auth.</u>, 532 A.2d 1272, 1277 (Pa. Commw. Ct. 1987).  Municipal employees and officials "are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment."  <u>Sanford v. Stiles</u>, 456 F.3d 298, 315 (3d Cir. 2006) (citing 42 Pa.C.S. § 8545).  "Pennsylvania courts have specifically held that municipalities and

their employees are immune from claims for defamation." Ruder v. Pequea Valley Sch. Dist.,

790 F. Supp. 2d 377, 400 (E.D. Pa. 2011), citing Alston v. PW-Phila. Weekly, 980 A.2d 215,

219 (Pa. Commw. Ct. 2009).

Under this well-established law, the District is immune from liability for Luo's

defamation claim.  Moreover, Ball and Schneider, as employees of the District, are immune from

liability absent any allegation in the complaint that their actions constituted a crime, actual fraud,

actual malice or willful misconduct.

Luo counters that when Pennsylvania received money for the implementation of the

IDEA, it waived sovereign immunity in federal court.  This argument misunderstands the

applicable regulation.  Pursuant to 34 C.F.R. § 300.177(a)(1), "[a] State that accepts funds under

this part waives its immunity under the 11th amendment of the Constitution of the United States

from suit in Federal court for a violation of this part."  Id.  This section simply means that

acceptance of funds under the IDEA results in a waiver of sovereign immunity pertaining to

IDEA claims.  A.W. v. Jersey City Public Schs., 341 F.3d 234, 254 (3d Cir. 2003); Charlene R.

v. Solomon Charter Sch., 63 F. Supp. 3d 510, 513 (E.D. Pa. 2014).  Luo admits that her

complaint in Luo III contains no IDEA action.  Compl., Luo III, ¶ 20.  Her defamation claim is

simply a state tort claim.  As nothing within the IDEA suggests that acceptance of federal

funding also waives state-created immunity for state tort claims, I will dismiss this claim with

prejudice.

I.       **Harassment Against the District and Ball (Claim 9)**

In claim nine, Luo alleges harassment against her by both Ball and the District.

Magistrate Judge Wells recommended dismissal of those claims because harassment is not an

actionable tort in Pennsylvania.  Utah v. Strayer Univ., No. 15-5909, 2016 WL 337104, at *3

(E.D. Pa. Jan. 27, 2016), citing DeAngelo v. Fortney, 515 A.2d 594, 596 (Pa. Super. Ct. 1986)

("Pennsylvania courts have not heretofore recognized a separate tort of harassment.").  While

Luo does not dispute this point, she seeks leave to amend her complaint to convert this claim into

one for intentional infliction of emotional distress.  As I am granting leave for Luo to file a

second amended complaint in Luo I consolidating all of her cognizable claims in Luo I and Luo

III, I will permit her to add a claim for intentional infliction of emotional distress.  Her claim for

harassment, however, will be dismissed with prejudice.

### J.        Claims Based on Performance and Use of an Assessment of B.L. (Claims 10 and 11)

Claims ten and eleven of the Luo III complaint assert claims relating to school

psychologist Schneider's evaluation of B.L. in February 2015.  Claim ten alleges a violation of a

"liberty right" against both Schneider and the District, alleging that although Luo consented to a

reevaluation, she did not consent to the manner in which Schneider conducted the evaluation.

Claim eleven is a substantive due process claim, again asserting that the manner in which

Schneider conducted the assessment was not accurate and the results of the assessment were

based on personal opinion.  Magistrate Judge Wells recommended that these claims against

Schneider be dismissed and all claims against the District based on its use of Schneider's

assessment be consolidated with Luo I.  I address each claim separately.

### 1.        Liberty Interest (Claim 10)

In claim 10, Luo appears to allege a deprivation of her liberty right to informed consent

regarding the care of B.L.  To state such a claim under § 1983, a plaintiff must identify a

"recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and

[show] that [she was] intentionally or recklessly deprived of that interest, even temporarily,

under color of state law."  Anspach ex rel. Anspach v. City of Phila., Dept. of Public Health, 503

F.3d 256, 262 (3d Cir. 2007) (quotations omitted).  The Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  Id. (quotations omitted).  However, "the right is neither absolute nor unqualified." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 182 (3d Cir. 2005).

The action at issue in this claim is Schneider's performance of an evaluation on B.L. at the behest of the District.  Notably, Luo does not contend that the actual performance of the evaluation violated her constitutional rights, as she concedes that she gave consent for the evaluation.  Compl., Luo III, ¶ 73.  Rather, she contends that Schneider performed that evaluation improperly by directly comparing the raw scores of the parent rating form and the teacher rating form.  Id. ¶¶ 78–82.  Accordingly, her claim amounts to a disagreement with the manner in which the assessment was conducted.  Luo does not identify, and I cannot find, any constitutionally protected right to informed consent as to how such an assessment will be performed.  Indeed, as aptly noted by Magistrate Judge Wells, if Luo was dissatisfied, she could have sought a due process hearing on this issue.  Because Luo has not pleaded a cognizable liberty interest claim on this ground, and could not legally do so, I dismiss this claim with prejudice.

### 2.      Substantive Due Process (Claim 11)

In claim eleven, Luo asserts that the manner in which Schneider performed his assessment and the District's use of that assessment to include a requirement for parent training in the IEP violated her substantive due process rights.  Magistrate Judge Wells recommended that this claim be dismissed with prejudice because Luo has failed to state a substantive due

process claim against the District or Schneider.[15]  Luo now contends that she has properly pled this claim.

I agree with the report and recommendation.  "To establish a substantive due process claim, a plaintiff must prove that the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."  Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).  The Supreme Court explained that where executive action is challenged on substantive due process grounds, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998) (quotation omitted).   If this question yields a positive answer, a reviewing court can proceed to consider whether the liberty or property interest infringed is sufficiently "fundamental" to be worthy of substantive due process protection.  Id. (referring to the egregiousness of an executive official's conduct as "an issue antecedent to any question about the need for historical examples of enforcing a liberty interest of the sort claimed").

Although Luo does not identify what fundamental liberty or property interest was allegedly violated by Schneider's actions,[16] I need not reach that inquiry as the complaint pleads no facts from which I can infer that Schneider's actions were conscious-shocking.  Mere

---

[15]     The report and recommendation originally opined that claim eleven, as asserted against the District, should be consolidated with Luo I, but, in the proposed order, recommended dismissal of this entire claim.  I agree that claim eleven fails to state a cognizable claim against either the District or Schneider and, therefore, will dismiss it with prejudice.

[16]     Notably, the denial of a FAPE does not give rise to a substantive due process violation because the substantive component of the Due Process Clause does not protect educational interests.  M.M. v. Tredyffrin/Easttown Sch. Dist., No. 06-1966, 2006 WL 2561242, at *12 (E.D. Pa. Sept. 1, 2006), citing San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 33–38 (holding that education is not a fundamental right or liberty).

negligence or lack of due care does not constitute a deprivation within the meaning of the Fourteenth Amendment.  Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 565 (W.D. Pa. 2008); see Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials.").  "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."  Lewis, 523 U.S. at 848. Rather, conscience-shocking behavior is "so 'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency."  Id., quoting Breithaupt v. Abram, 352 U.S. 432, 435 (1957).

Luo asserts that "Schneider used raw score to make a comparison of home and school, which was not permitted by the producer of ABAS [the Adaptive Behavior Assessment System]. Schneider used personal opinion to make a decision, which was never permitted by the producer of ABAS."  Compl., Luo III, ¶ 198.  In the next claim of the complaint, Luo contends that Schneider "carelessly used unapproved assessment to conduct allegation."  Id. ¶ 210.  Although plaintiff cursorily alleges that "Schneider shocked the conscience to make decision by personal opinion," such an allegation is nothing more than a legal conclusion which I must disregard for purposes of a motion to dismiss.  In essence, the claim sounds in negligence and does not rise to the level of egregiousness needed for a substantive due process claim. Absent a constitutional violation by Schneider, the corresponding claim against the District cannot stand.  Therefore, I will dismiss this claim with prejudice.

### K.   Negligence Against the District and Schneider (Claim 13)

The final claim of the Luo III complaint asserts that Schneider and the District negligently conducted the aforementioned evaluation of B.L., causing Luo to suffer monetary

damages and emotional distress.  Magistrate Judge Wells correctly held that this tort claim, like the defamation claims, was barred by the immunity imposed by the Tort claims Act.  Luo again objects on the ground that Pennsylvania waived its immunity by accepting federal funds under the IDEA.  For the same reasons that I previously rejected Luo's argument of waiver, I reject that argument again here.

**CONCLUSION**

While the parties in this case present numerous cognizable claims, the present state of the three pending actions makes practical resolution of the issues difficult if not impossible.  Having reviewed the parties' claims under a Rule 12(b)(6) standard and with an eye towards efficiency, I make several rulings on the motions to dismiss.  First, with respect to Luo II, I will not dismiss any of the District's complaint, but I will dismiss Luo's counterclaims and third-party complaint with prejudice.  Second, with respect to Luo I, I will dismiss with prejudice Luo's Fifth Amendment claims, all claims against defendant Skidmore and all claims against defendant Montayne.  I will also dismiss all claims against the District without prejudice to the filing of a second amended complaint that clearly and plainly states a Monell cause of action against the District.  I will not dismiss claims 1–3 and 5–8 against defendant Ball, or claims 5–6 against defendant Kolbay.  Third, with respect to Luo III, I will dismiss with prejudice claims 1, 3 and 7–13.  The remaining claims—claims 2, 4, 5 and 6—will be dismissed without prejudice to Luo's right to include them in a second amended complaint in Luo I.  At that time, Luo may also include her proposed claim for intentional infliction of emotional distress.  When amending her Luo I complaint, however, Luo should take care to combine like claims and include all factual allegations relating to a particular claim within that count of the complaint: *e.g.* all substantive due process allegations regarding the requirement of parent training in the IEP should be in one

count, all right to privacy claims should be in one count, etc.  Moreover, Luo must keep in mind the requirement of Federal Rule of Civil Procedure 8 that she set forth a "short and plain statement of the claim showing that [she] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Finally, I will order an administrative consolidation of <u>Luo I</u> and <u>Luo II</u> to permit effective and efficient resolution of all claims therein.

   As a final note, I recognize that Luo, as a parent of a special-needs child, has a strong and admirable motivation to obtain the best possible educational environment for her son. Nonetheless, her strategy—resulting from her pro se status—of pursuing every possible legal claim against every person involved with the IEP process has unnecessarily consumed an exorbitant amount of judicial resources with little progress achieved in the overall case. Maintenance of this course will inevitably prolong the proceedings and result in an undesirable delay of the resolution of her claims.  Accordingly, prior to filing any amended complaint, Luo would be well-advised to retain the assistance of counsel who is well-versed in this area of the law.

   An appropriate order follows.